**WORLD RELIGIOUS RELIEF, dba
The Word Network, Plaintiff,**

v.

**GOSPEL MUSIC CHANNEL,
Defendant.**

Case No. 08–10116.

United States District Court,
E.D. Michigan,
Southern Division.

May 20, 2008.

Thomas M. Dixon, Clark Hill, Detroit, MI, for Plaintiff.

Laurie J. Michelson, Butzel Long, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BERNARD A. FRIEDMAN, Chief Judge.

### I. *Introduction*

Defendant Gospel Music Channel ("GMC" or "defendant") has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the Complaint of Plaintiff World Religious Relief, doing business as The Word Network ("TWN" or "plaintiff") for lack of subject matter jurisdiction, or in the alternative, for a finding by the Court that its discretionary exercise of federal declaratory jurisdiction over Plaintiff's action is not warranted.

### II. *Facts*

GMC is a Delaware limited liability company. It has provided television programming and related services since 2004 under its trade name, and a federally registered and common law service mark. Dft. Exh. A. The registered GMC logo includes the words "gospel music" in a distinctive, lower case font. Dft. Exh. A. GMC uses its mark and logo in its advertising and marketing.

TWN has been a mainstream media broadcaster for African–American Christian ministries and gospel music since 2000. It advertises itself as "the undisputed source for urban ministries and gospel music." Its programming is broadcast to hundreds of countries worldwide.

In October, 2007, Defendant's attorney sent a letter to Plaintiff's Marketing Director, informing Plaintiff that one of its print ads that appeared in several television industry trade publications used the words "gospel music" in a large font, in lower case letters that are similar to the typeface used by Defendant. Defendant told Plaintiff's Marketing Director that "the use of the words 'gospel music' in this fashion and in connection with television programming" was "likely to cause confusion with GMC's registered marks." Dft. Exh. B. Defendant further stated that TWN's use of those words as they appeared in the print ad infringed Defendant's marks and constituted "violation of both federal and state trademark laws, as well as unfair competition and dilution of [Defendant's] marks" Dft. Exh. B. Defendant requested a response from Plaintiff within two weeks. *Id.*

Plaintiff, referring to Defendant's letter as a "threat" in its briefs, responded to Defendant's letter, stating its position that the phrase "gospel music" is purely descriptive, and it did not believe that its use of the phrase "gospel music" infringed on Defendant's marks or rights. Dft. Exh. D.

Defendant replied to Plaintiff's response, stating its position that the phrase "gospel music," when used in a particular font, and when "used in connection with the services for which it is registered," infringed on Defendant's marks. Defendant requested that Plaintiff "change the font ... and not use those words in a prominent trademark-like manner so as to appear as if they are being used to identify the name of [Plaintiff's] channel." Dft. Exh. E. Defendant did not threaten litigation, and did not demand that the use of the words "gospel music" cease entirely.

In December, 2007, Defendant's attorney received a phone message from Plaintiff's attorney, and the two spoke the following day. Defendant states its attorney suggested that the Plaintiff change the

font of the words "gospel music," so that the use of them be in a less similar visual manner than Defendant's marks. Defendant claims that Plaintiff's attorney told Defendant's attorney that it would discuss the matter with his client, and get back to him. Defendant did not hear back from Plaintiff's attorney and, instead, Plaintiff filed the present complaint on January 8, 2008.

Plaintiff, in its complaint, seeks a declaratory judgment that it is not infringing on Defendant's trademarks and service marks or unfairly competing by its continued use of the phrase "gospel music."

### III. *Analysis*

■ Defendant first argues that the Court lacks subject matter jurisdiction over TWN's declaratory judgment action because the Complaint fails to present a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

An action can be brought under the Declaratory Judgment Act only if there is a separate and independent basis for federal jurisdiction. 28 U.S.C. § 2201. Plaintiff alleges federal question jurisdiction, under 28 U.S.C. § 1331.

In order for the Court to have jurisdiction over a claim for a declaratory judgment, there must be an "actual controversy." U.S. Const. Art. III, § 2; 28 U.S.C. § 2201. As the U.S. Supreme Court has explained, regarding the existence of an actual controversy, "basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

■ The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Kreinberg v. Dow Chemical Co.,* 2007 WL 2782060 at *9 (E.D.Mich. Sept. 24, 2007) *quoting MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007). In *MedImmune,* the Supreme Court notes that "[i]n *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: 'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *MedImmune,* 127 S.C.t at 771.

Here, the Court finds that the parties' correspondence was insufficient to create an "actual controversy," of "sufficient immediacy" sufficient for conferring jurisdiction under the Declaratory Judgment Act. At the time of the filing of this litigation, the parties had only exchanged three letters. The prospect of litigation was not mentioned by either party, and Defendant's tone in its letters, while protective of what it perceives to be its legal interests, was certainly not threatening. In fact, from the letters, it appears that Plaintiff became unnecessarily defensive early on, misstating or misinterpreting statements made in Defendant's letters for the sake of this action.

For example, Defendant stated in its October 29, 2007 letter that Plaintiff's use of the words "gospel music," when used in a particular font, and in connection with television programming, may cause confu-

sion with Defendant's registered marks. Plaintiff, in response, completely ignored Defendant's qualifying factors of concern regarding the choice of font and the use for television programming, and instead asserted in its November 13, 2007 that "[Defendant] does not have exclusive rights to the words 'gospel music' in any form or for any goods or services." Plaintiff, rather than addressing Defendant's concern, seems to have made an effort to create a larger controversy than Defendant asserted.[1] However, Defendant, in its reply letter two days later, stated clearly, "[w]e do not dispute your client's right to use the words 'gospel music' to describe the type of programming offered by your client. However, the *prominent* use of those words in a lower case font that closely resembles the font used by our client for those very same words in trademark infringement. Accordingly, we must request that your client change the font." This correspondence alone is not sufficient to satisfy the "actual controversy" requirement of the Declaratory Judgment Act. Plaintiff's purposeful misstatement or misinterpretation of Defendant's correspondence can not serve to confer jurisdiction upon the parties' dispute. Further, the correspondence does not create an issue of "sufficient immediacy" for the Court to assume jurisdiction, as the possibility of litigation or trademark enforcement was never mentioned in the three cordial letters exchanged between the parties.

**IV.  *Order***

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED.

---

1. The Court recognizes, though, that there is some disagreement between the parties, and encourages the parties to make more effort to settle their differences outside of this forum.